## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2017, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Gerald Lee Doll<br>Michigan City, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>James B. Martin<br>Deputy Attorney General<br>Indianapolis, Indiana |

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gerald L. Doll,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 29, 2017<br><br>Court of Appeals Case No.<br>91A05-1704-PC-912<br><br>Appeal from the White Superior Court<br><br>The Honorable Rex W. Kepner, Special Judge<br><br>Trial Court Cause No.<br>91D01-1610-PC-1 |

**Mathias, Judge.**

[1] Gerald L. Doll ("Doll") appeals the post-conviction court's denial of his petition for post-conviction relief. Doll raises five issues for our review, which we consolidate and restate as the following three issues:

I. Whether Doll voluntarily accepted the State's plea offer;
II. Whether Doll received ineffective assistance of counsel; and
III. Whether the sentence imposed by the plea agreement was erroneous.

[2] We affirm.

## Facts and Procedural History

[3] On September 4, 2012, Doll pleaded guilty to Class B felony robbery resulting in bodily injury, Class C felony robbery, and Class D felony resisting law enforcement. By accepting the plea agreement, the State agreed it would not file any additional charges, and it dropped count IV and count V.[1]

[4] During the guilty plea hearing held on the same day, Doll admitted that he understood the plea agreement, that no promises had been made to convince him to plead guilty, that he had read over and discussed the plea agreement with his attorney, that he personally signed the plea agreement, that he freely and voluntarily accepted the plea agreement, and that he agreed with the

---

[1] The materials provided to us on appeal do not contain the charging information, Doll's petition for post-conviction relief, or the plea agreement; therefore, we do not know the substance of his claim to the post-conviction court, the particulars of his plea agreement, or what the charges were for count IV and count V. Additionally, we note that Doll has run afoul of Indiana Appellate Rule 50(F) by reproducing the transcript in his appendix.

factual basis provided by the State for each of the three offenses. Appellant's App. pp. 62–76.

[5] The trial court accepted the plea agreement at Doll's sentencing hearing on October 2, 2012. Pursuant to the plea agreement, the court imposed sentences of twenty years for the Class B felony, eight years for the class C felony, and two years for the Class D felony, all to run consecutively, resulting in a thirty-year sentence executed in the Department of Correction.

[6] Doll filed a petition for post-conviction relief on October 27, 2016. An evidentiary hearing was held on March 10, 2017, where Doll questioned the prosecutor from his original case as well as his trial counsel. The post-conviction court denied Doll's petition on March 31 and stated in relevant part:

> The Petitioner has failed to present adequate evidence to show his guilty plea was not voluntarily and knowingly entered. Although there was a possibility of a habitual filing or charge, there was not sufficient evidence presented for that reason or any other reason to support a legal basis to set aside the conviction. It certainly seems logical and realistic that a Defendant should consider other charges or enhancements that could be filed when determining whether to accept a plea offer. That fact alone is not coercion, nor does it make a plea involuntary; it is just a realistic evaluation of the circumstances.

> Mr. Doll has also raised an issue of ineffective assistance of counsel. Assuming [Doll's trial counsel] did not take depositions or do an independent investigation, approximately 80-90% of cases resolved by Plea Agreement do not involve depositions or independent investigations. There has not been adequate

evidence that [Doll's trial counsel] failed to perform to the normal and reasonable standards as an attorney.

Appellant's Br. at 33. Doll now appeals.

# Discussion and Decision

The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, we do not reweigh evidence nor judge the credibility of witness; therefore, to prevail, Doll must show that the evidence in its entirety leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. When the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we do not defer to the court's legal conclusions, but the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008).[2]

---

[2] Doll notes that in his motion to correct error he requested that the post-conviction court rule in full on "all issues that were presented in" his original petition for post-conviction relief and his amended petition. Appellant's Br. at 29–30. Doll contends that the post-conviction erred because it failed to address the sentencing issues he allegedly raised. We initially note that Doll filed his motion to correct error on April 20, 2017, and then filed a notice of appeal on May 8, 2017; the post-conviction court concluded that it lacked jurisdiction to enter a ruling on the motion to correct error once the notice of appeal was filed. Appellant's

# I. Voluntariness of Plea

Doll contends that his guilty plea was not knowingly, voluntarily, and intelligently made. Specifically, Doll alleges that he did not voluntarily accept his plea because the State improperly held out the potential of a habitual offender enhancement as leverage, which, he argues, amounted to coercion, duress, and an unsubstantiated threat. Appellant's Br. at 13.

Although Doll intersperses the two arguments, the voluntariness of a plea is distinct from a claim of ineffective assistance of counsel and the two claims are reviewed under different standards. *Hanks v. State*, 71 N.E.3d 1178, 1189 (Ind. Ct. App. 2017), *trans. denied*. Voluntariness in Indiana "focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *State v. Moore*, 678 N.E.2d 1258, 1266 (Ind. 1997). A plea is unlikely to be found involuntary on collateral attack where the plea is entered after the trial court has

---

App. p. 54; *see also* Indiana Appellate Rule 8 ("The Court on Appeal acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary."). Here, notice of completion of clerk's record is noted in the CCS on May 9, and therefore, this is the date the trial court lacked jurisdiction. Additionally, because the record does not contain Doll's original petition for post-conviction relief or his amended petition, we are unable to review whether the post-conviction court erred by not addressing all issues Doll allegedly raised. *See* Ind. Appellate Rule 46(8)(A) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."). Accordingly, we find this argument waived. *Weaver v. Niederkorn*, 9 N.E.3d 220, 223 (Ind. Ct. App. 2014) (failure to present cogent argument with citation to authority results in waiver); *see also Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004) (explaining that pro se litigants without legal training are held to the same standard as trained counsel and are required to follow procedural rules), *trans. denied*.

reviewed the various rights which the defendant is waiving and has made the necessary inquires called for by statute. *Id.* at 1265; Ind. Code § 35-35-1-2.

[10] Here, a voluntariness hearing was conducted before Doll's plea was accepted, with his trial counsel present and by his side. The trial court methodically explained to Doll all of the rights he waived by pleading guilty, as well as the possible sentencing consequences. Doll acknowledged that he understood the plea agreement, that no promises had been made to convince him to plead guilty, and that no one forced him to plead guilty. Additionally, Doll readily admitted to the factual basis of the plea. The post-conviction court found Doll failed to present sufficient evidence to show that his guilty plea was not voluntarily and knowingly entered and it stated:

> Although there was a possibility of a habitual filing or charge, there was not sufficient evidence presented for that reason or any other reason to support a legal basis to set aside the conviction. It certainly seems logical and realistic that a Defendant should consider other charges or enhancements that could be filed when determining whether to accept a plea offer. That fact alone is not coercion, nor does it make a plea involuntary; it is just a realistic evaluation of the circumstances.

Appellant's Br. at 33. We agree.

[11] At the post-conviction hearing, Doll never questioned his trial counsel about the decision to plead guilty. Doll's trial counsel acknowledged that although he could not specifically remember it, he would have had discussions with Doll about the potential for a habitual offender enhancement, and he would have

had negotiations with the State about the potential enhancement. This is evidence of trial counsel doing his job, and is not indicative of duress, coercion, or threats. Based on these facts and circumstances, the post-conviction court properly concluded that Doll's guilty plea was knowingly and voluntarily made.

## II. Ineffective Assistance of Counsel

[12] Doll contends his trial counsel was ineffective: (1) for failing to depose any witnesses listed in the pre-trial conference notice, (2) for failing to adequately explain the ramifications of Doll's sentence and why he was eligible for a thirty-year sentence, and (3) for failing to raise an alleged defect with the State's threatened filing of a habitual offender enhancement. A claim of ineffective assistance of trial counsel here requires a showing that: (1) Doll's trial counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced Doll such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). "Isolated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997) (citations omitted).

[13] Because Doll's claims are based on his contention that he received ineffective assistance of counsel as part of his guilty plea, we examine his claims under our supreme court's decision in *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura*

categorizes two types of ineffective assistance of trial counsel claims made in the context of guilty pleas: (1) the failure to advise the defendant on an issue that impairs or overlooks a defense, and (2) an incorrect advisement of penal consequences. *Id.* at 500. Doll's claims here fall within *Segura's* first category, and in analyzing claims under the first category, our supreme court has explained:

> As to those claims, we remain of the view that in order to establish that the guilty plea would not have been entered if counsel had performed adequately, the petitioner must show that a defense was overlooked or impaired and that the defense would likely have changed the outcome of the proceeding. Similarly, if counsel's shortcomings are claimed to have resulted in a lost opportunity to mitigate the penalty, in order to obtain a new sentencing hearing, the petitioner must show a reasonable probability that the oversight would have affected the sentence.

*Id.* at 499.

[14] We initially note that Doll has failed to point to any evidence demonstrating anything other than that his trial counsel both logically and realistically evaluated the circumstances at the time when he advised Doll with respect to the State's plea offer. His trial counsel was able to negotiate a plea bargain with the State whereby the State would accept Doll's admission of guilt to the first three counts, and in return it would drop two other unidentified counts, and not file for a habitual offender enhancement. These negotiations significantly reduced Doll's potential sentence.

[15]    With regard to Doll's trial counsel's alleged failure to depose any witnesses or take part in any independent investigation, the post-conviction court observed:

> Assuming [Doll's trial counsel] did not take depositions or do an independent investigation, approximately 80-90% of cases resolved by Plea Agreement do not involve depositions or independent investigations. There has not been adequate evidence that [Doll's trial counsel] failed to perform to the normal and reasonable standards as an attorney.

Appellant's Br. at 33. Doll does not identify what, if any benefit, he would have gained had his trial counsel deposed witnesses or conducted independent investigation prior. Even in the context of a trial, the failure to depose witnesses does not in and of itself demonstrate ineffective assistance of counsel. *Herrera*, 679 N.E.2d at 1326. During his guilty plea hearing, Doll readily admitted to the factual basis for each of the counts in which he pleaded guilty. Therefore, Doll fails to allege how he was prejudiced by his trial counsel's failure to depose witnesses, and as a result, his claim fails.[3]

---

[3] Doll also contends that his trial counsel "submitted none of the State's case to any form of meaningful or substantive adversarial testing as required under the *Cronic* analysis." Appellant's Br. at 12 (alteration in font). Doll refers to the United States Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984), where the Court held "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659. We first note that Doll did not proceed through trial, as did the defendant in *Cronic*. Additionally, Doll's counsel was able to negotiate a plea bargain with the State whereby the State agreed to drop two charges and agreed not to file for a habitual offender enhancement— significantly reducing Doll's potential sentence. Simply put, the *Cronic* presumption of prejudice is inapplicable here.

[16]    Doll also argues his trial counsel was ineffective for failing to fully explain the plea agreement to him and for failing to explain how Doll was eligible for a thirty-year sentence. At his guilty plea hearing, Doll admitted in open court that he had read the plea agreement, understood the plea agreement, and discussed the plea agreement with his trial counsel before signing it. Doll also acknowledged that he understood that by pleading guilty he waived the right to appeal any sentence imposed.

[17]    The length of Doll's sentence does not render his plea involuntary either. At the time Doll pleaded guilty, the advisory sentencing range for the crimes he committed were six to twenty years for the Class B felony, two to eight years for the Class C felony, and one-half year to three years for the Class D felony. The trial court explained to Doll during sentencing that by accepting the plea agreement, it was imposing sentences of twenty years for the Class B felony, eight years for the Class C felony, and two years for the Class D felony, all to run consecutively for an aggregate term of thirty years. Thus, the plea agreement Doll entered into was within the sentencing range for each felony Class, and Doll received a significant benefit from the State by deciding to plead guilty because the State dropped two charges and agreed not to file for a habitual offender enhancement. Counsel's performance is presumed effective, *Hanks*, 71 N.E.3d at 1184, and Doll has failed to show that his trial counsel's performance here was deficient. And even if it was, Doll has failed to establish that he was subject to prejudice based on the alleged lack of advisement about sentencing and the thirty-year term contained in his plea agreement.

[18] Finally, Doll contends that his counsel's performance was deficient for failing to object to the State's threatened late filing of a habitual offender charge and that deficiency allowed the State to use the prospect of a habitual offender enhancement for leverage during plea negotiations. Under Indiana Code section 35-34-1-5(e) (2012), an amendment of an indictment to add a habitual offender charge must be made "not later than ten (10) days after the omnibus date." However, on a showing of good cause, the trial court has discretion to permit the filing of the habitual offender charge any time before trial. *Id.*

[19] The State never filed a habitual offender information in Doll's case; Doll merely alleges that the potential for a habitual offender enhancement played an improper role in his plea negotiations. However, Doll's trial counsel testified that although he could not remember specifically discussing the potential enhancement, it "would be normal for negotiations at pre-trial." Tr. p. 19. And Doll's counsel testified, "it's my understanding that so long as it wasn't just out of the blue and never discussed and they filed it and it was appropriate - - or you know there was grounds to do so, that they could file it and we could ask for an extension of time." *Id.* at 20.

[20] We have consistently held that the purpose of Indiana Code section 35-34-1-5(e) is to allow a defendant sufficient time to prepare a defense for the habitual offender charge. *E.g., Jackson v. State*, 938 N.E.2d 29, 39 (Ind. Ct. App. 2010), *trans. denied.* Here, that purpose was served. Doll and his trial counsel were well

aware of the potential of the habitual offender charge,[4] and it was used by the prosecutor in plea negotiations that culminated in a deal that benefited Doll. Additionally, Doll has failed to explain how he was prejudiced by the prospect of a charge that was never brought and that both he and his counsel were aware of as a possibility. Simply said, the prosecutor could have sought a habitual offender enhancement until the time of trial on a showing of good cause. Doll's trial counsel was not ineffective for failing to raise an objection to the State's alleged threat of a late filing habitual offender enhancement, and even if he was, Doll has failed to demonstrate any resulting prejudice. *See Falls v. State*, 797 N.E.2d 316, 319 (Ind. Ct. App. 2003) (holding that the defendant could not show prejudice as a result of a late habitual offender charge where the State filed it late as a result of the parties' ongoing plea negotiations), *trans. denied*.

## III.  Erroneous Sentence

Doll also argues that during sentencing, the trial court erred when it imposed "unsubstantiated aggravators," and that Doll was denied his right "to have a jury determine all the factual subject matter legally essential to his sentence." Appellant's Br. at 24, 27. Doll states that the trial courts alleged errors violate

---

[4] At the time Doll committed the offenses at issue in this appeal, Indiana Code section 35-50-2-8(a) (2012) stated, "the state may seek to have a person sentenced as a habitual offender for any felony by alleging . . . that the person has accumulated two (2) prior unrelated felony convictions." Because Doll's criminal history is not part of the materials provided on appeal, we cannot say whether or not Doll was eligible for the habitual offender enhancement. However, during his guilty plea hearing, Doll admitted to prior convictions for attempted theft, theft, trafficking stolen property, escape, and theft using transportation. Appellant's App. p. 70. He also testified that his last felony conviction was in 2000. *Id.*

the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Doll is mistaken.

[22] In *Apprendi*, the Court held that except for a prior conviction, any fact that increases a defendant's penalty beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490. Four years later in *Blakely*, the Court explained that a trial court may not enhance a sentence based on additional facts, unless those facts are either (1) a prior conviction; (2) facts that are found by a jury beyond a reasonable doubt; (3) facts admitted by the defendant; or (4) facts that are found by the sentencing judge after the defendant has waived *Apprendi* rights and consented to judicial fact-finding. 542 U.S. at 310. As a result, our supreme court in 2005 held that Indiana's sentencing scheme did not comport with *Blakely*, and was therefore unconstitutional. *Smylie v. State*, 823 N.E.2d 679, 686 (Ind. 2005).

[23] After *Smylie*, our legislature revised Indiana's sentencing scheme, and on appeal, we now apply the sentencing scheme in effect at the time of a defendant's offense. *See Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007). Doll committed the offenses at issue in this appeal in 2012, well after Indiana's current "advisory" sentencing scheme was enacted. Our supreme court has explained that "[c]ourts may now impose any sentence within the statutory range for the crime; a sentence at the high end of the range under the present scheme is not an 'enhanced sentence' for *Blakely* and *Smylie* purposes." *Marbley-El v. State*, 929 N.E.2d 194, 195 (Ind. 2010). Although all the trial court did here was enforce the sentence contained in Doll's plea agreement, none of the three

sentences imposed fell outside of the sentencing range for the particular Class of felony.[5] Accordingly, the trial court did not err when it sentenced Doll pursuant to his plea agreement.

## Conclusion

[24] Doll has failed to carry his heavy burden on appeal of showing that the post-conviction court clearly erred in determining that his plea was not involuntary, and that he was not denied the effective assistance of trial counsel. In addition, his sentence was not erroneous, and therefore, we affirm.

Vaidik, C.J., and Crone, J., concur.

---

[5] Doll received the maximum twenty years for the Class B felony conviction, the maximum eight years for the Class C felony conviction, and two years for the Class D felony conviction.